

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00127-CV

---

PAUL CZARKOWSKI-GOLEJEWSKI, APPELLANT

V.

KELLY VICTORIA WILSON, APPELLEE

---

On Appeal from the 98th District Court
Travis County, Texas
Trial Court No. D-1-FM-22-000500, Honorable Laurie Eiserloh, Presiding

---

January 2, 2025

## MEMORANDUM OPINION[1]

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Paul Czarkowski-Golejewski appeals from the *Final Decree of Divorce* entered below. He urges three issues. Two challenge the award of spousal maintenance. The third concerns a temporary order pending appeal awarding his ex-wife, Kelly Victoria Wilson, appellate attorney's fees and expenses. We affirm the divorce decree but reverse the temporary order.

---

[1] The Texas Supreme Court transferred this appeal from the Third Court of Appeals. Thus, we are bound by the latter's precedent should it conflict with ours. TEX. R. APP. P. 41.3.

***Background***

Paul and Kelly married in March 2009 in Australia. Shortly thereafter, the couple moved to Austin, Texas. Paul obtained a financially lucrative job while Kelly toiled with employment paying no more than $10.50 an hour. And, in 2017, her deteriorating health and mental condition resulted in her unemployment. Thereafter, she was subjected to medication and surgeries.

Paul filed for divorce January 2022, after engaging in a romantic affair with a third party. Kelly counter-petitioned for divorce. By the time of trial, she had undergone both spinal and neck procedures and was awaiting further surgeries. Psoriatic arthritis and spondylosis (bony growths) had invaded her body. Other of her medical circumstances impeded her ability to sit, stand, bend, twist, or lift heavy objects. Soon she came to rely on neighbors for assistance in her daily life while also suffering from major depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder.

The trial court signed its *Final Decree of Divorce* on December 12, 2023. Through it, Paul was ordered to pay Kelly $5,000 in monthly spousal maintenance until July 31, 2026, at which time the matter would be revisited. The court also ordered Paul to pay various of Kelly's attorney's fees via the Final Decree. Omitted, however, were those pertaining to an appeal. That void would be filled via a temporary order executed post-judgment and after Paul perfected his appeal.

***Issue One—Post-Divorce Spousal Maintenance***

By his first issue, Paul contended the trial court erred by ordering him to pay spousal maintenance. Allegedly, Kelly failed to prove a prerequisite, that being her minimum reasonable needs. He argued that 1) a maintenance award may only

2

encompass "needs" as opposed to "wants," 2) the sum awarded must be the minimal amount sufficient to cover those needs, and 3) the needs and amount must be reasonable. We overrule the issue.

"Spousal maintenance" is "an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse." TEX. FAM. CODE ANN. § 8.001(1); *Dalton v. Dalton*, 551 S.W.3d 126, 130-31 (Tex. 2018). Statute provides the general elements to obtaining it. For instance, a "court may order maintenance . . . only if the spouse seeking [it lacks] sufficient property . . . on dissolution of the marriage to provide for the spouse's minimum reasonable needs and … the spouse seeking maintenance" "is unable to earn sufficient income to provide for [her] minimum reasonable needs because of an incapacitating physical or mental disability . . . ." TEX. FAM. CODE ANN. § 8.051(2)(A).

The legislature did not define "minimum reasonable needs." *Debrock v. Debrock*, No. 03-21-00308-CV, 2022 Tex. App. LEXIS 9454, at *19 (Tex. App.—Austin Dec. 28, 2022, pet. denied) (mem. op.). So, determining them lies within the trial court's discretion as exercised in relationship to the particular facts of each case. *Id.* Those needs may include such things as a mortgage or housing, transportation, clothing, childcare and the like. *See Amos v. Amos,* 79 S.W.3d 747, 750 (Tex. App.—Corpus Christi-Edinburg 2002, no pet.) *(*noting same); *see also In re Marriage of Boyd*, No. 07-14-00211-CV, 2015 Tex. App. LEXIS 6452, at *4-5 (Tex. App.—Amarillo June 24, 2015, no pet.) (mem. op.) (stating that we review the trial court's award of spousal maintenance under the standard of abused discretion). Moreover, while finding facts upon which to exercise that discretion, the trial court need not check its common sense, common knowledge, wisdom, or

3

experience garnered from the daily affairs of ordinary life at the door of the courtroom. *Duhon v. State*, No. 07-07-00064-CR, 2007 Tex. App. LEXIS 7866, at \*6 (Tex. App.—Amarillo Oct. 2, 2007, no pet.) (mem. op.) (stating that "the trier of fact may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life, using inferences that may reasonably be drawn from evidence").

To reiterate, the sole complaint of Paul urged via issue one concerned "minimum reasonable needs" and whether Kelly proved hers. In addressing that question, we initially observe that Paul cited no authority suggesting that only the cheapest basic essentials to survive must be considered as such needs. Nor did our research reveal such authority. Instead, what they are is influenced by the facts and circumstances of each case.

Those facts and circumstances at bar begin with the trial court's finding Kelly "suffer[ed] from psoriatic arthritis to a degree requiring surgery, major depressive disorder, severe anemia, costochondritis, chronic pain, pain induced insomnia, and disk herniation resulting in multiple surgeries." Furthermore, the "continued erosion of [her] joints and spine will require continued surgeries into the foreseeable future." She was "disabled, and her disability will continue indefinitely beyond the foreseeable future." Paul contested none of that. Nor did he dispute the findings that: 1) Kelly had no income; 2) her physical and mental conditions prevented her from earning an income; 3) she would have "substantial" medical and mental health expenses, indefinitely; and 4) he earned a monthly gross income exceeding $32,000.

Next, in awarding spousal maintenance, the trial court had opportunity to hear not only Kelly's testimony but also peruse her exhibit R-02. Admitted at trial without objection,

4

it itemized her monthly expenses, to which expenses she assigned monetary sums. Aside from those pertaining to "veterinary" (i.e., $412) and "gas" (i.e., $150), Paul acknowledged the reasonableness of those expense sums, at trial.

As for whether various of the itemized expenses were minimum reasonable needs, the trial court surely could utilize common sense and knowledge to legitimately conclude that housing for Kelly fell within that scope. And, to that expense, Kelly assigned a monthly mortgage payment of $1,400, property taxes of $800, and housing insurance of $128.33. Next, housing without gas, electricity, or running water would be of nominal value to one in Kelly's condition, or so a factfinder could infer based on common sense, knowledge, and experience. And, to those utilities Kelly assigned the sum of $240.

Of course, common sense, common knowledge, and knowledge of the affairs of daily life also could lead one to reasonably infer that someone suffering from debilitating health not only would need a means of communicating with others but also would have continuing medical costs. Those expenses, again which Paul deemed reasonable, were $75 for phone service, $770 to cover physical and mental health costs, and $65 to purchase medications.

Transportation nowadays is also a must, or so one who has lived within the Austin area may reasonably deduce. Kelly's exhibit contained a sum covering same. It approximated $357 for a car payment. And, with a car comes the need for auto insurance; that monthly expense was $72.

Next, neither we nor a reasonable trial court can ignore the indisputable fact that people must physically nourish themselves to survive. They must eat. The uncontested monthly sum allotted to that endeavor was $612. And, at this point, one adding together

5

the foregoing monthly expenses (all of which Paul deemed reasonable) would encounter a sum of about $4,519. The latter is, admittedly, less than the $5,000 in maintenance awarded. But wait, there was more.

An expense related to Kelly's continuing education also appeared in the exhibit. It approximated $2,166. Interestingly, Paul did not dispute his ex-wife's lack of income or formal education beyond high school. Nor did he question her disabled status. Indeed, he further said "[i]t [did] not seem unreasonable she wants to go back to school." And, that she earned a wage no higher than $10.50 per hour after emigrating from Australia met with no dispute. What these circumstances reveal is that the trial court had before it a disabled person . . . having no current income . . . historically earning no more than $10.50 an hour . . . having to eventually maintain a house and car in Austin and buy her clothes and food . . . seeking to gain a post-high school education. Can one reasonably deny that a disabled person seeking to improve her prospect of self-sufficiency through further education is not a necessity . . . we think not under the circumstances at bar. And, most importantly, Paul acknowledged the reasonableness of the educational expense assigned to that goal.

That leaves us increasing the aforementioned $4,519 sum by $2,166 to $6,685. The latter far exceeds the $5,000 monthly allowance awarded against Paul by $1,685. Whether the trial court would have awarded more is unknown for statute capped maintenance at $5,000. *See* TEX. FAM. CODE ANN. § 8.055(a) (stating that the trial "court may not order maintenance that requires an obligor to pay monthly more than the lesser of . . . $5,000 . . . or 20 percent of the spouse's average monthly gross income"). Nevertheless, Kelly's exhibit, the expenses listed therein, Paul's concession to the

6

reasonableness of those expenses alluded to above, and the circumstances of Kelly's health, education, and earning ability serve as more than some evidence insulating the $5,000 award from attack as unfounded or an abuse of discretion. *Amos*, 79 S.W.3d at 749 (stating that a trial court does not abuse its discretion where there is some evidence of a substantive and probative character to support the decision or if reasonable minds could differ as to the result).

### *Issue Two—Spousal Maintenance under Section 8.052*

Through his second issue, Paul argues the trial court erred by awarding spousal maintenance without considering all the mandatory factors set forth in § 8.052 of the Texas Family Code. Statute does mention a litany of factors influencing the "nature, amount, duration, and manner of periodic [spousal maintenance] payments". TEX. FAM. CODE ANN. § 8.052 (itemizing the factors). Assuming *arguendo* that a trial court's failure to consider each one constituted error, one must remember that this is a civil as opposed to criminal case. And, in a civil case where error occurred, the burden lies with the appellant to illustrate it caused harm necessitating reversal. *In re Marriage of Brisco*, No. 07-21-00196-CV, 2022 Tex. App. LEXIS 5321, at *11 (Tex. App.—Amarillo July 28, 2022, no pet.) (mem. op.). Paul having not addressed the topic of harm, he failed to carry his appellate burden to prove the need for reversal.

### *Issue Three—Attorney's Fees and Expenses*

Third, Paul claims the trial court erred by ordering him to pay Kelly's appellate attorney's fees and expenses via a post-judgment temporary order. Many grounds underlie his complaint. We need only consider one. It pertains to the timeliness of her motion. And, upon considering it, we sustain the issue.

7

According to statute, "on the motion of a party or on the court's own motion, after notice and hearing, the trial court may render a temporary order as considered equitable and necessary for the preservation of the property and for the protection of the parties during an appeal . . . ." TEX. FAM. CODE ANN. § 6.709(a). The temporary order may be one "requiring the payment of reasonable and necessary attorney's fees and expenses." *Id.* at § 6.709(a)(2). Kelly sought relief under that provision. Paul argues that her effort was untimely, however. He relies on another statutory provision to support his contention. It provides that a "motion seeking an original temporary order under this section: (1) may be filed before trial; and (2) may not be filed by a party after the date by which that party is required to file the party's notice of appeal under the Texas Rules of Appellate Procedure." *Id.* at § 6.709(h)(1) & (2).

As directed by our Supreme Court, "[i]n construing a statute, our objective is always—and only—to ascertain and give effect to the Legislature's intent, as both expressed and implicit in the enacted language." *Morath v. Lampasas Indep. Sch. Dist*., 686 S.W.3d 725, 739-40 (Tex. 2024). So, we afford "statutory terms their common, ordinary meaning unless either the text provides a different definition or the common meaning leads to an absurd result." *City of Austin v. Quinlan*, 669 S.W.3d 813, 821 (Tex. 2023). Adding "extra-textual words or requirements" is eschewed. *Id.* But, "the statute's words with reference to the Legislature's broader statutory context" cannot be ignored. *Id.* Finally, all words of the statute are given effect "without treating any language as surplusage, if possible." *Id.* With these rules in mind, we return to § 6.709(h).

Again, Kelly moved for relief. So, hers was the motion seeking an original temporary order. And, it could "not be filed . . . after the date by which that party is required

8

to file the party's notice of appeal under the Texas Rules of Appellate Procedure." "[T]hat party" refers to the party moving for the order. Now, the plain meaning of the word "the" generally describes a particular person or thing. *See* dictionary.com/browse/the (defining the term as a definite article "used, especially before a noun, with a specifying or particularizing effect"). So, reference to "the party's notice" harkens back to a particular party, that being the party who filed the motion. Thus, "the party's notice" means the party invoking § 6.709(a). And, this leads us to read § 6.709(h), for purposes at bar, as saying the motion for an order "may not be filed by a party [Kelly] after the date by which that party [Kelly] is required to file the party's [Kelly's] notice of appeal under" the rules of appellate procedure.

Next, the trial court signed its final judgment on December 12, 2023. That meant anyone caring to appeal had to file his or her respective notice within 30 days, except in certain situations. TEX. R. APP. P. 26.1. One such situation deals with a party timely moving to modify the judgment. *Id.* at 26.1(a)(2). Paul did just that. Consequently, the deadline by which any party had to file a notice of appeal extended 90 days of the date the trial court signed the judgment. *Id.* Now, if any party filed a notice within that 90-day period, any other party was free to file a notice within that same period "or 14 days after the first filed notice of appeal, whichever is later." *Id.* at 26.1(d).

Paul's having timely extended the initial deadline by which to perfect an appeal (January 11, 2024) to 90 days (March 13, 2024), he also timely filed his notice of appeal on March 7, 2024. Thus, had Kelly cared to appeal, she was obligated to file her notice by the later of March 13, 2024, or March 21, 2024 (14 days after March 7th). That means she also had to move for temporary orders no later than March 21, 2024, per § 6.709(h).

9

Yet, she waited until April 9, 2024. Her motion being untimely, the statutory window prescribed in § 6.709(h) had closed, and the trial court erred in granting her relief under § 6.709(a). Kelly tried to avoid this outcome by interjecting § 6.709(i), however.

Her argument cannot overcome two obstacles. First, the provision is inapposite. It says that: "[t]he trial court **retains jurisdiction** to conduct a hearing and sign an original temporary order under this section until the 60th day after the date any eligible party has filed a notice of appeal from final judgment under the Texas Rules of Appellate Procedure." TEX. FAM. CODE ANN. § 6.709(i) (emphasis added). Specifying the period during which a trial court may hear and rule upon a § 6.709(a) motion addresses the topic of **jurisdiction**, not the time afforded a party to invoke it.

Second, and more importantly, adopting Kelly's position would render § 6.709(h) surplusage. If the period within which the trial court could exercise jurisdiction controlled, then there would be no need for a movant to seek relief by the date he or she was "required to file the party's notice of appeal." That party could wait long after the deadline to file a notice of appeal lapsed. Doing so simply before the trial court's jurisdiction expired would suffice. As noted earlier, all words of the statute are given effect without treating any language as surplusage, if possible. Our construction of § 6.709(h) in relation to § 6.709(i) avoids nullifying aspects of the former, unlike Kelly's. Thus, we reject her position.

We affirm the trial court's final decree of divorce but reverse the trial court's May 6, 2024 "Temporary Orders Pending Appeal."

Brian Quinn
Chief Justice